Joseph M. Alioto (SBN 42680)
Jamie L. Miller (SBN 271452)
Angelina Alioto-Grace (SBN 206899)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone:  (415) 434-8900
Facsimile:   (415) 434-9200
Email:  jmalioto@aliotolaw.com
            jmiller@aliotolaw.com

[ADDITIONAL COUNSEL LISTED ON LAST PAGE]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

LISA MCCARTHY, MARY KATHERINE ARCELL, KEITH DEAN BRADT, JOSE BRITO, JAN-MARIE BROWN, ROSEMARY D'AUGUSTA, BRENDA DAVIS, PAMELA FAUST, CAROLYN FJORD, DONALD C. FREELAND, DONNA FRYE, GABRIEL GARAVANIAN, HARRY GARAVANIAN, YVONNE JOCELYN GARDNER, VALARIE JOLLY, MICHAEL MALANEY, LENARD MARAZZO, TIMOTHY NIEBOER, DEBORAH PULFER, BILL RUBINSOHN, SONDRA RUSSELL, JUNE STANSBURY, CLYDE DUANE STENSRUD, GARY TALEWSKY, DIANA LYNN ULTICAN, PAMELA WARD, CHRISTINE M. WHALEN,

          Plaintiffs,

     v.

INTERCONTINENTAL EXCHANGE, INC., INTERCONTINENTAL EXCHANGE HOLDINGS, INC., ICE BENCHMARK ADMINISTRATION LIMITED, ICE DATA SERVICES, INC., ICE PRICING AND REFERENCE DATA LLC, BANK OF AMERICA, N.A., BANK OF AMERICA CORPORATION, BARCLAYS BANK, PLC, BARCLAYS CAPITAL, INC., CITIBANK, N.A., CITIGROUP, INC., CITIGROUP

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.:


**COMPLAINT FOR PERMANENT INJUNCTIONAND FOR DAMAGES AGAINST DEFENDANTS' VIOLATIONS OF §§ 1 AND 2 OF THE SHERMAN ANTITRUST ACT, 15 U.S.C. §§ 1, 2**


**JURY TRIAL DEMANDED**

- 1 -

GLOBAL MARKETS, INC.,
COÖPERATIEVE RABOBANK U.A.,
CREDIT SUISSE GROUP AG, CREDIT
SUISSE AG, CREDIT SUISSE SECURITIES
(USA) LLC, DEUTSCHE BANK AG,
DEUTSCHE BANK SECURITIES INC.,
HSBC HOLDINGS PLC, HSBC BANK PLC,
HSBC BANK USA, N.A., HSBC
SECURITIES (USA) INC., JPMORGAN
CHASE & CO., JPMORGAN CHASE BANK,
N.A., J.P. MORGAN SECURITIES LLC,
LLOYDS BANK PLC, LLOYDS
SECURITIES INC., MUFG BANK, LTD.,
THE BANK OF TOKYO-MITSUBISHI UFJ
LTD., MITSUBISHI UFJ FINANCIAL
GROUP INC., MUFG SECURITIES
AMERICAS INC., ROYAL BANK OF
SCOTLAND GROUP PLC, ROYAL BANK
OF SCOTLAND PLC, NATIONAL
WESTMINSTER BANK PLC, NATWEST
MARKETS SECURITIES INC., ROYAL
BANK OF CANADA, RBC CAPITAL
MARKETS, LLC, SUMITOMO MITSUI
BANKING CORPORATION, SUMITOMO
MITSUI FINANCIAL GROUP INC.,
SUMITOMO MITSUI BANKING
CORPORATION EUROPE LTD., SMBC
CAPITAL MARKETS, INC., THE
NORINCHUKIN BANK, UBS GROUP AG,
UBS AG,  AND UBS SECURITIES LLC,

Defendants.

_____

Plaintiffs Lisa McCarthy, *et al*., are borrowers and consumers of loans and credit cards with variable interest rates, including those incorporating the USD LIBOR benchmark rate fixed by Defendants' unlawful agreement, combination, and/or conspiracy, in violation of §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2. Plaintiffs hereby seek injunctive relief under § 16 of the Clayton Act, 15 U.S.C. § 26 to prohibit Defendants' ongoing violations of the antitrust laws and seek damages under § 4 of the Clayton Act, 15 U.S.C. § 15, caused by reason of Defendants' unlawful conduct.  Plaintiffs complain and allege as follows:

## **INTRODUCTION**

Since the mid-1980s and continued up to and including the filing of this Complaint, Defendants have been and are members of a price-fixing cartel designed to eliminate price competition between and among themselves and co-conspirators to fix the intra bank interest rate used as the basis for loans to consumers, including, inter alia, mortgages, student loans, credit cards, auto loans, lines of credit, contracts, and all varieties of financial instruments.

This price-fixed rate is commonly accepted as "the world's most important number," used by an estimated US $350 trillion ($350,000,000,000,000.00) of outstanding contracts in maturities ranging from overnight to more than 30 years.

The formula to fix the rate agreed to by the Defendant banks and co-conspirators, and their Defendant agents charged with calculating the agreed price-fixed interest rate, is simple in its arithmetic and devastating in its implementation: (1) the fifteen Defendant banks submit their proposals of what the interest rate should be to the Defendant ICE US LIBOR; (2) the Defendant ICE US LIBOR excludes the four highest and four lowest; and then (3) averages the remaining eight. The result of this agreed "trim average" is the agreed interest rate to be charged.

The Defendant banks agreed to this "trim average" formula, the resultant rate, and the implementation of it in their consumer loans. The consumers paid the fixed-price as the base of their loans and/or are substantially threatened with injury or damage by reason of the continued use of the price-fixed rate.

The price-fixed rate used by the Defendant banks and their co-conspirators as the base in their consumer loans is a *per se* violation of Sections 1 and 2 of the Sherman Antitrust Act. The consumer Plaintiffs are injured and damaged and/or substantially threatened with injury

and damage, and are authorized to bring this suit pursuant to Sections 4 and 16 of the Clayton Antitrust Act.

The price-fixing agreement between and among the Defendant banks and co-conspirators, and the continued use and enforcement of the price-fixing agreement, should and must be permanently enjoined. No consumer of any consumer loan based in whole or in part, or in any way infected or affected by the price-fixed interest rate, should be required to pay, directly or indirectly, the price-fixed USD LIBOR interest rate.

The Plaintiffs pray for, and respectfully demand the immediate entry of a permanent injunction voiding the Defendant banks' price-fixing agreement and any enforcement of it, directly or indirectly, and seek damages caused by reason of Defendants' unlawful combination or conspiracy.

## JURISDICTION

1.     This action is brought under Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15, 26, for damages and to prohibit Defendants' ongoing violations of §§ 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, caused by reason of Defendants unlawful agreement to fix the USD LIBOR rate, and their unlawful conspiracy to monopolize by agreeing to set USD LIBOR. This Court has subject matter jurisdiction of the federal antitrust claims asserted in this action under Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15, 26, and Title 28 United States Code Sections 1331 and 1337.

2.     Defendants' conspiracy and conduct was within the flow of, was intended to, and did, in fact, have a substantial effect on the interstate commerce of the United States. During the relevant time period, Defendants used the instrumentalities of interstate commerce, including interstate wires, in furtherance of their illegal scheme. In addition, because Defendants transact business in this judicial district, venue is proper pursuant to 15 U.S.C.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

§§15, 22 and 26, and 28 U.S.C. § 1391.

## THE PLAINTIFFS

3.      Each Plaintiff named herein below is an individual and a citizen of the state listed as the address for each such Plaintiff, and in the four years prior to the filing of this action, each Plaintiff was a borrower/consumer of a consumer loan or credit card with a variable interest rate:

Mary Katherine Arcell, New Orleans, LA

Keith Dean Bradt, Reno, NV

Jose Brito, Reno, NV

Jan-Marie Brown, Reno, NV

Rosemary D'Augusta, San Francisco, CA

Brenda Davis, Dallas, TX

Pamela Faust, Cincinnati, OH

Carolyn Fjord, Sacramento, CA

Donald C. Freeland, Cincinnati, OH

Donna Frye, Colorado Springs, CO

Gabriel Garavanian, Boston, MA

Harry Garavanian, Boston, MA

Yvonne Jocelyn Gardner, Colorado Springs, CO

Valarie Jolly, Dallas, TX

Michael Malaney, Grand Rapids, MI

Lenard Marazzo, Reno, NV

Lisa McCarthy, Naples, FL

Timothy Nieboer, Kalamazoo, MI

Deborah Pulfer, Sidney, OH

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

Bill Rubinsohn, Philadelphia, PA

Sondra Russell, Waco, TX

June Stansbury, Reno, NV

Clyde Duane Stensrud, Seattle, WA

Gary Talewsky, Boston, MA

Diana Lynn Ultican, Seattle, WA

Pamela Ward, Holmes Beach, FL

Christine M Whalen, New Orleans, LA

4.      Because Plaintiffs are consumers of variable interest rate loans, they are threatened with harm and damage in that USD LIBOR is an unlawful rate regularly utilized as a component of the pricing in variable interest rate consumer loans by the Defendants and their co-conspirators.  Further, Plaintiffs have been damaged and are threatened with damage in that they have paid and will pay anticompetitive rates in the future for variable interest rate loans, a component of which was unlawfully fixed by Defendants' unlawful combination and/or conspiracy.

5.      More specifically, numerous Plaintiffs, including Plaintiffs Lisa McCarthy, Jose Brito, Jan-Marie Brown, Brenda Davis, Gabriel Garavanian, Harry Garavanian, Bill Rubinsohn, Sandy Russell, Gary Talewsky, are consumers of credit cards issued by unnamed co-conspirator Capital One, which lists the 3-month and 1-month LIBOR rates in its statements as possible components in disclosing variable interest rates to be charged to its customers.

6.      Plaintiff Yvonne Jocelyn Gardner is a consumer of a variable interest rate mortgage from Defendant Bank of America.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

## THE DEFENDANTS

7.    Defendant Intercontinental Exchange Inc. is a Delaware corporation with its principal place of business at 5660 New Northside Drive, Atlanta, Georgia 30328, registered to do business in California.

8.    Defendant Intercontinental Exchange Holdings, Inc. is a Delaware corporation with its principal place of business at 5660 New Northside Drive, Atlanta, Georgia 30328, registered to do business in California.

9.    Defendant ICE Benchmark Administration Limited (f/k/a NYSE Euronext Rate Administration Limited, hereinafter "IBA") is a UK company with a registered address of Milton Gate, 60 Chiswell Street, London, EC1Y 4SA, United Kingdom. NYSE Euronext Rate Administration Limited was renamed ICE Benchmark Administration Limited after Intercontinental Exchange, Inc.'s acquisition of NYSE Euronext in 2013. After the acquisition, four of NYSE Euronext's directors joined ICE's 14-member board, and the resulting company is dual-headquartered in Atlanta and New York.

10.    Defendant ICE Data Services, Inc. ("ICE Data Services") is a Delaware corporation registered to do business in California, with a principal place of business located at 100 Church Street, 11th Floor, New York, New York 10007. ICE Data Services owns and operates the ICE Report Center, which houses USD ICE LIBOR data and with which registration is required to access certain USD ICE LIBOR rate and submission data from ICE.

11.    Defendant ICE Pricing and Reference Data LLC ("ICE Pricing and Reference Data") is a Delaware company registered to do business in California with a principal place of business located at 5660 New Northside Drive, Atlanta, Georgia 30328.

12.    The ICE entities (hereinafter, the ICE entities shall be collectively referred to as "ICE", when not referenced individually) and its other unnamed subsidiaries and affiliates

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

13.     Each Bank Defendant named below is one of the Panel Banks contributing rate data to ICE for calculation of the USD LIBOR benchmark rate.

14.     Defendant Bank of America, N.A. is a national banking association, and Defendant Bank of America Corporation, a Delaware corporation (collectively, "Bank of America"). Both entities headquarters are located at 100 North Tryon Street, Charlotte, North Carolina 28202 and are registered to do business in California. Bank of America and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

15.     Defendant Barclays Bank, plc, is a U.K. public limited company with its principal place of business at 1 Churchill Place, London E14 5H, United Kingdom, and operates a New York branch at 745 Seventh Avenue, New York, New York 10019, and Defendant Barclays Capital Inc. is a Connecticut corporation with its principal place of business at 745 Seventh Avenue, New York, New York 10019 (collectively, "Barclays"). Barclays and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

16.     Defendant Citibank, N.A. is a federally chartered national banking Association, and Defendant Citigroup Inc. is a Delaware corporation. Both entities are headquartered at 399 Park Avenue, New York, New York 10022. Defendant Citigroup Global Markets Inc. is a Delaware corporation headquartered at 390-388 Greenwich Street, New York, New York 10013 and registered to do business in California (hereinafter, the Citibank/Citigroup entities shall be referred to collectively as "Citibank" if not referred to individually). Citibank and its

other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

17.     Defendant Coöperatieve Rabobank U.A. ("Rabobank") is a bank organized under the laws of Netherlands with its principal place of business at Croeselaan 18, 3521 CB Utrecht, Netherlands, and operates a New York branch at 245 Park Avenue, 37th Floor, New York, New York 10167. Rabobank and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

18.     Defendant Credit Suisse Group AG is a Swiss aktiengesellschaft ("AG") with its principal place of business at 8 Paradeplatz, 8001 Zurich, Switzerland.  Defendant Credit Suisse AG is a Swiss AG with its principal place of business at Ueltibergstrasse 231, 8070 Zurich, Switzerland.  Credit Suisse AG is registered to do business in California and it operates a New York branch located at Eleven Madison Avenue, 24th Floor, New York, New York 10010.  Defendant Credit Suisse Securities (USA) LLC is a Delaware limited liability company.  It is registered to do business in California, with its principal place of business at Eleven Madison Avenue, 24th Floor, New York, New York 10010 (hereinafter, the Credit Suisse entities will be referred to collectively as "Credit Suisse"). Credit Suisse and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

19.     Defendant Deutsche Bank AG is a German aktiengesellchaft with its principal place of business at Taunusanlage 12, Frankfurt, 60325, Germany.  Defendant Deutsche Bank AG is registered to do business in California, and it operates a San Francisco branch at 101 California Street, San Francisco, CA   94111. Defendant Deutsche Bank Securities Inc. ("DBSI") is a Delaware corporation registered to do business in California, with its principal

place of business at 60 Wall Street, 4th Floor, New York, New York 10005 (hereinafter, the Deutsche Bank entities shall be referred to collectively as "Deutsche Bank" when not referenced individually). Deutsche Bank and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

20. Defendant HSBC Holdings plc is a British public limited company with its principal place of business at 8 Canada Square, London, E14 5HQ, United Kingdom. Defendant HSBC Bank plc is a British public limited company with its principal place of business at 8 Canada Square, London, E14 5HQ, United Kingdom. Defendant HSBC Bank USA, N.A. is a national banking association headquartered at HSBC Tower, 452 Fifth Avenue, New York, New York 10018 and registered to do business in California. Defendant HSBC Securities (USA) Inc. is a Delaware corporation registered to do business in California, with its principal place of business at HSBC Tower, 452 Fifth Avenue, New York, New York 10018 (hereinafter, the HSBC entities shall be referred to collectively as "HSBC" if not referenced individually). HSBC and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

21. Defendant JPMorgan Chase & Co. is a Delaware corporation with its principal place of business at 270 Park Avenue, New York, New York 10017. Defendant JPMorgan Chase Bank, N.A. is a federally-chartered national banking association registered to do business in California, headquartered at 270 Park Avenue, New York, New York 10017. Defendant J.P. Morgan Securities LLC is a Delaware limited liability company registered to do business in California, with its principal place of business at 277 Park Avenue, New York, New York 11072 (hereinafter, the JPMorgan Chase entities shall be referred to collectively as

"JP Morgan" if not referenced individually).  JP Morgan and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

22.     Defendant Lloyds Bank plc is a British public limited company with registered offices at 25 Gresham Street, London EC2V 7HN, United Kingdom, and it operates a New York branch at 1095 Sixth Avenue, New York, New York 10036. Defendant Lloyds Securities Inc. is a Delaware corporation headquartered at 1095 Sixth Avenue, New York, New York 10036 (hereinafter, the Lloyds entities shall be referred to collectively as "Lloyds" if not referenced individually).  Lloyds and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

23.     Defendant MUFG Bank, Ltd. is a bank organized under the law of Japan with its principal place of business at 7-1, Marunouchi 2-chome Chiyoda-ku, Tokyo 100-8388, Japan.  MUFG Bank, LTD is registered to do business in California and operates a New York branch at 1251 Sixth Avenue, New York, New York 10020 and a San Francisco Branch at 350 California Street, 1st Floor, San Francisco, CA  94104. Defendant The Bank of Tokyo-Mitsubishi UFJ Ltd. is a bank organized under the laws of Japan with its principal place of business at 7-1, Marunouchi 2-chome Chiyoda-ku, Tokyo 100-8388, Japan and which operates a New York branch at 1251 Sixth Avenue, New York, New York 10020. Defendant Mitsubishi UFJ Financial Group Inc. is a Japanese corporation with its principal place of business at 7-1, Marunouchi 2-chome Chiyoda-ku, Tokyo 100-8388, Japan. Defendant MUFG Securities Americas Inc. is a Delaware corporation registered to do business in California, with its principal place of business at 1221 Avenue of the Americas, 6th Floor, New York, New York 10020 (hereinafter, all four MUFG entities shall be referred to collectively as

"MUFG" if not referenced individually). MUFG and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

24.     Defendant Royal Bank of Scotland Group plc is a United Kingdom public limited company with its principal place of business at 1000 Gogarburn, Edinburgh, EH12 1HQ, Scotland.  Defendant Royal Bank of Scotland plc is a United Kingdom public limited company with its principal place of business located at 36 St. Andrew Square, Edinburgh, EH2 2YB, Scotland, and it operates a Connecticut branch located at 600 Washington Boulevard, Stamford, Connecticut 06901. Defendant National Westminster Bank plc is a U.K. public limited company with its principal place of business at 135 Bishopsgate, London, EC2M 3UR, United Kingdom. Natwest is a member of the USD LIBOR Panel.  Defendant Natwest Markets Securities Inc. (f/k/a RBS Securities Inc.) is a Delaware corporation registered to do business in California, with its principal place of business at 600 Washington Boulevard, Stamford, Connecticut 06901 (hereinafter the Royal Bank of Scotland and National Westminster entities shall be referred to collectively as "Royal Bank of Scotland" or "RBS" when not referenced individually). RBS and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

25.     Defendant Royal Bank of Canada is a chartered Schedule I Bank under the Canada Bank Act with its principal place of business at 200 Bay Street, Toronto, Ontario M5J 2J5, Canada, and it operates a New York branch at Three World Financial Center, 200 Vesey Street, 8th Floor, New York, New York 10281.  Defendant RBC Capital Markets, LLC is a Minnesota limited liability company registered to do business in California, with its principal place of business and headquarters located at Three World Financial Center, 200 Vesey Street,

8th Floor, New York, New York 10281 (hereinafter, the Royal Bank of Canada entities shall be referred to collectively as "Royal Bank of Canada" or "RBC" when not referenced individually). RBC and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

26.    Defendant Sumitomo Mitsui Banking Corporation is a bank organized under the laws of Japan with its principal place of business at 1-1-2, Marunouchi, Chiyoda-ku, Tokyo, Japan. Defendant Sumitomo Mitsui Banking Corporation is registered to do business in California, and it operates a San Francisco branch at 555 California Street, Suite 3350, San Francisco, CA 94104, and a New York branch at 277 Park Avenue, New York, New York 10172. Defendant Sumitomo Mitsui Financial Group Inc. is a Japanese corporation organized under the laws of Japan with its principal place of business at 1-1-2, Marunouchi, Chiyoda-ku, Tokyo, Japan. Defendant Sumitomo Mitsui Banking Corporation Europe Ltd. is a U.K. public limited company with its principal place of business at Temple Court, 11 Queen Victoria Street, London, EC4N 4TA, United Kingdom. SMBC Capital Markets, Inc. is a Delaware corporation registered to do business in California, with its principal place of business at 277 Park Avenue, New York, New York 10172 (hereinafter the Sumitomo entities shall be referred to collectively as "Sumitomo" if not referenced individually). Sumitomo and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

27.    Defendant The Norinchukin Bank ("Norinchukin") is a Japanese bank organized and operated under the laws of Japan with its principal place of business at 1-12, Uchikanda 1-chome, Chiyoda-ku, Tokyo 101-0047, Japan, and it operates a New York branch located at 245 Park Avenue, Floor 21, New York, New York 10167. Norinchukin and its

other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

28.    Defendant UBS Group AG is a Swiss AG with principal places of business at 45 Bahnhofstrasse, Zurich CH-8098, Switzerland and 1 Aeschenvorstadt, Basel CH-4051, Switzerland. Defendant UBS AG is a Swiss AG with principal places of business at 45 Bahnhofstrasse, Zurich CH-8098, Switzerland and 1 Aeschenvorstadt, Basel CH-4051, Switzerland and it operates a Connecticut Branch at 677 Washington Boulevard, Stamford, Connecticut 06901. Defendant UBS Securities LLC is a Delaware limited liability company registered to do business in California, with its principal place of business at 1285 Avenue of the Americas, New York, New York 10019 (hereinafter, the UBS entities shall be referred to collectively as "UBS" if not referenced individually).  UBS and its other unnamed subsidiaries and affiliates share a unity of corporate interest and operate as a single enterprise in furtherance of the combination and conspiracy alleged herein.

29.    Various persons, partnerships, firms, and corporations not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offense alleged in this Complaint, and have performed acts and made statements in furtherance of the illegal combination and conspiracy.  The unreasonable restraint of trade in this case is the hub-and-spoke price fixing agreement between and among ICE, the Defendant Contributor Panel Banks, and virtually every other bank in the United States using LIBOR as a component of interest charged in its variable interest rate consumer loans and credit. By perpetuating this arrangement, the banks collectively have ceded power and authority to ICE and the Defendant banks to set, implement, and enforce a horizontal price-fixing restraint in which they are knowing participants.

1

2

**FACTUAL BACKGROUND**

BBA LIBOR

3

4

30.     British Bankers' Association ("BBA") is the leading trade association for the

5

financial-services sector in the United Kingdom.[1]

6

31.     When BBA administered LIBOR, it was a private association that was operated

7

without regulatory or government oversight and was governed by senior executives from its

8

member banks.

9

32.     The BBA began setting LIBOR on January 1, 1986, using separate panels for

10

different currencies.  The U.S. Dollar ("USD") LIBOR panel was composed of as many as 16-

11

18 member banks of the BBA.

12

33.     Under the BBA LIBOR regime, the daily USD LIBOR was set by surveying

13

the 16 panel bank members. Each panel bank member was asked, "At what rate could you

14

borrow funds, were you to do so by asking for and then accepting inter-bank offers in a

15

reasonable market size just prior to 11 a.m.?" Each bank was to respond on the basis of (in

16

part) its own research, and its own credit and liquidity risk profile. Thomson Reuters later

17

compiled these submissions and published them on behalf of the BBA. The final LIBOR was

18

the mean of the eight submissions left after excluding the four highest submissions and the

19

four lowest.[2]  The daily submission of each bank was to remain confidential until after LIBOR

20

was finally computed and published; and all 16 individual submissions were to be published

21

22

along with the final daily rate and would thus be "transparent on an *ex post* basis."[3]

23

34.     Between 2007 and 2012, investigations revealed that the panel member banks

24

had intentionally manipulated and conspired to fix LIBOR.  A number of panel member banks

25

26

27

28

---

[1] *Gelboim*, 823 F.3d at 765.
[2] *Gelboim*, 823 F.3d at 765-766.
[3] *Gelboim*, 823 F.3d at 766.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

paid substantial fines for their participation in the conspiracy, including UBS, Barclays, RBS, Rabobank, Deutsche Bank, and JPMorgan Chase, among others.

35.     On September 25, 2012, it was announced publicly that the BBA was preparing to hand over administration of LIBOR to UK regulators.[4]

## DEFENDANTS' UNLAWFUL COMBINATION AND CONSPIRACY TO FIX PRICES ON USD LIBOR-BASED VARIABLE-INTEREST RATE CONSUMER LOANS AND CREDIT CARDS AND CONSPIRACY TO MONOPOLIZE

36.     On February 1, 2014, the Intercontinental Exchange Benchmark Administration Limited ("IBA") took over managing LIBOR, changing it to the ICE LIBOR.

37.     LIBOR is calculated and published by IBA on London business days for 5 currencies with 7 maturities quoted for each - ranging from overnight to 12 months, producing 35 rates, at 11:55 am London time on each applicable London business day.[5]

38.     Each LIBOR calculation is currently based on input data contributed by a panel of between 11 and 16 Contributor Banks for each of the five LIBOR currencies. Each Contributor Bank contributes input data for all seven LIBOR tenors in every currency in respect of which it is on a panel.[6]

39.     According to the IBA, its LIBOR Oversight Committee considers the following criterion for eligibility on the Contributor Bank Panels:  (1) transactional activity overall; (2) expertise in wholesale markets; (3) bank size; (4) credit quality; (5) reputational standing; (6) types and mix of transactional activity and bank sources of funding; and (7) geographical reach of banks.[7]

40.     The following table shows the current panel composition for USD LIBOR:

---

[4] https://www.wsj.com/articles/SB10000872396390444180004578018371243449916
[5] https://www.theice.com/publicdocs/ICE_LIBOR_Roadmap0316.pdf, at p. 5.
[6] https://www.theice.com/iba/libor and
https://www.theice.com/publicdocs/ICE_LIBOR_Roadmap0316.pdf, at p. 5.
[7] https://www.theice.com/publicdocs/Policy_Composition_ICE_LIBOR_Panels.pdf

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*



41.     Defendants Bank of America, Barclays, Citibank, Rabobank, Credit Suisse, Deutsche Bank, HSBC, JPMorgan Chase, Lloyds Bank, MUFG Bank, NatWest/Royal Bank of Scotland, Royal Bank of Canada, Sumitomo, Norinchukin, and UBS are IBA Contributor Banks for the USD LIBOR panel.

42.     LIBOR is calculated by the IBA based on submissions from the Contributor Banks through the use of a "Waterfall Methodology" which includes the following levels: (1) "Transaction-Based" Data, with a greater weighting of transactions booked closer to 11:00 a.m. London time; (2) "Transaction-Derived" Data, including time-weighted historical eligible transactions adjusted for market movements and linear interpolation; and (3) "Expert Judgment," market and transaction data based "expert judgment," using the bank's own internally approved procedure.[8]

---

[8] https://www.theice.com/iba/libor

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

43.     IBA calculates LIBOR using a trimmed arithmetic mean. Once all submissions are received from the Contributor Banks, they are ranked in descending order and then the highest and lowest quartiles of submissions are excluded to remove outliers from the final calculation. A mean is calculated from the remaining middle quartiles, rounded to five decimal places.  Each Contributor Bank's submission carries an equal weight in the calculation, subject to the trimming.[9]



44.     LIBOR is jointly set by the Defendants.  Defendants and their co-conspirator banks in the United States agree to use and do use USD LIBOR as a component of the interest charged in variable interest rate loans and credit cards in the United States. Variable rate interest consumer loans and credit tied to USD LIBOR include variable rate mortgages, lines of credit, credit card debt, student loans, and other forms of consumer debt.

---

[9] https://www.theice.com/publicdocs/ICE_LIBOR_Roadmap0316.pdf, at p. 16.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

**Variable Interest Rate Consumer Loans Tied to LIBOR**

45.     A reasonable estimate of the competitive price is the lowest rate submitted by the Contributor Banks, which is excluded by virtue of Defendants' unlawful combination or conspiracy.

46.     Each USD LIBOR Contributor bank agrees to adhere to the LIBOR Code of Conduct established by IBA.

47.     The LIBOR Code of Conduct established by the IBA, "sets out the framework within which LIBOR Contributor Banks are expected to operate."[10]

48.     Under the LIBOR Code of Conduct, each Contributor Bank's "submitters and their direct managers must acknowledge in writing that they have read the [LIBOR] code of conduct and that they will comply with it."[11]

---

[10] https://www.theice.com/publicdocs/LIBOR_Code_of_Conduct_Issue_7_Current.pdf, at p. 3.

[11] https://www.theice.com/publicdocs/LIBOR_Code_of_Conduct_Issue_7_Current.pdf, at p. 31.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

49.     Under the LIBOR Code of Conduct, a "Contributor Bank is required to formulate its LIBOR Submissions in accordance with the methodology requirements published by IBA at: https://www.theice.com/publicdocs/ICE_LIBOR_Methodology.pdf."[12]

50.     Under the LIBOR Code of Conduct, each Contributor Bank is required to make "Submissions….between 11.05 and 11.39.59 on each London business day.   Submissions received at or after 11.40 will be regarded as late.  If a bank makes frequent late Submissions, the matter will be reported to the LIBOR Oversight Committee…"[13]

51.     Under the LIBOR Code of Conduct, each Contributor Bank is required to maintain "written policies and procedures designed to ensure that this LIBOR Code is implemented and systematically applied within the Contributor Bank…"[14]

52.     Under the LIBOR Code of Conduct, each Contributor Bank must "ensure that appropriate records are kept of its business and internal organisation, which must be available to IBA on request, to the extent permitted by applicable law, in order to monitor the bank's compliance with the requirements under [the] LIBOR Code [of Conduct]."[15]

53.     By agreeing to comply and adhere to the terms set forth in the LIBOR Code of Conduct, the Contributor Banks agree to fix USD LIBOR.

54.     Further, the LIBOR Code of Conduct is overseen and enforced by the IBA's "LIBOR Oversight Committee," which has "broad market representation, being comprised of Contributor Banks, benchmark users, market infrastructure providers, independent non-executive directors of IBA, and other relevant experts. Representatives from the Board of

---

[12] https://www.theice.com/publicdocs/LIBOR_Code_of_Conduct_Issue_7_Current.pdf, at p. 8.

[13] https://www.theice.com/publicdocs/LIBOR_Code_of_Conduct_Issue_7_Current.pdf, at p. 9

[14] https://www.theice.com/publicdocs/LIBOR_Code_of_Conduct_Issue_7_Current.pdf, at p. 14.

[15] https://www.theice.com/publicdocs/LIBOR_Code_of_Conduct_Issue_7_Current.pdf, at p. 28.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

Governors of the Federal Reserve System, the Swiss National Bank and the Bank of England also sit on the committee as observers."[16]

55.     The LIBOR Oversight Committee, which is composed of some Defendants and other unnamed co-conspirators, is responsible for, "Reviewing the methodology, scope and definition of the benchmark (including assessing its underlying market and usage); Overseeing any changes to the benchmark; and Overseeing and reviewing the LIBOR Code of Conduct."[17]

56.     The members of the LIBOR Oversight Committee as of December 2019 are as follows:[18]

| First Name | Surname | Company | Committee Position |
| --- | --- | --- | --- |
| Paula | Madoff | ICE Benchmark Administration (Independent Non-Executive Director) | Chairwoman |
| Timothy J | Bowler | ICE Benchmark Administration (President) | Ex Officio |
| David | Bowman | Federal Reserve System (Associate Director - Division of International Finance) | Observer |
| Steve | Bullock | Lloyds Bank (Head of Benchmark Submission and Supervision) | Contributor of Input Data representative |
| David | Clark | EVIA (Chairman) | Association representative |
| Clare | Dawson | LMA (Chief Executive) | Association representative |

---

[16] https://www.theice.com/iba/libor
[17] https://www.theice.com/iba/libor
[18] https://www.theice.com/publicdocs/LIBOR_Oversight_Committee_Disclosures_of_Conflicts_of_Interest.pdf

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

| Galina | Dimitrova | The Investment Association (Director, Investments and Capital Markets) | Association representative |
|---|---|---|---|
| Angus | Graham | UBS (Group Finance) | Contributor of Input Data representative |
| John | Grout | Independent | Independent Expert |
| George | Handjinicolaou | Piraeus Bank (Chairman) | Financial Intermediary representative |
| Matthias | Jüttner | Swiss National Bank (Assistant Director - Money Market) | Observer |
| Candice | Koederitz | ICE Benchmark Administration (Independent Non-Executive Director) | Independent Non-Executive Director |
| Will | Parry | Bank of England (Senior Manager - Sterling Markets Division) | Observer |
| David | Peniket | ICE Futures US (Director) | Market Infrastructure Provider representative |
| Rob | Thurlow | Mizuho Corporate Bank (Head of ALM / Benchmark Manager) | Contributor of Input Data representative |
| Kathleen | Yoh | Independent | Independent Expert |

57.     In 2018-2019, the IBA conducted two surveys to determine and agree upon which LIBOR settings would be produced after 2021.[19]

58.     The IBA plans on "[u]sing the results of this survey and other outreach work…[to] work with globally active banks to seek to publish certain LIBOR settings after year-end 2021."[20]

59.     The survey explains that, "The primary goal of IBA's work in seeking to obtain sufficient banking industry support to publish certain LIBOR settings after year-end 2021 is to

---

[19] https://www.tactweb.org/media/2019/01/2019.05.02-LIBOR-Working-Group.pdf, at p. 3.
[20] https://www.theice.com/publicdocs/Results_of_the_IBA_Survey_on_the_use_of_LIBOR.pdf, at p. 2.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

provide these settings to users with outstanding LIBOR-linked contracts that are impossible or impractical to modify."[21]

60.     The first survey of its existing global Panel Banks sought "to identify the LIBOR settings that are critical to the global financial system."  The results of that survey were never made public.[22]

61.     The second survey of LIBOR end-users sought to determine which LIBOR settings were most commonly used.[23]

62.     The results of the survey were published in March 2019 and included feedback from 109 Respondents. According to the minutes of a LIBOR Trade Association Working Party Meeting held in May 2019, the overwhelming majority of survey respondents focused on lending activities when asked to set out the main uses of currency and tenor pairs that they used the most.

63.     According to the minutes of a LIBOR Trade Association Working Party Meeting held in May 2019, the IBA is now focusing on engaging with panel and potential panel banks to seek their commitment to providing continued submissions in respect of those tenor and currency pairs after 2021.[24]

64.     In response to the question, "IBA would like to understand which LIBOR currency and tenor pairs you and/or your organisation use the most and for which you would like to see IBA work to seek an agreement with globally active banks to support publication after 2021," the top three currency/tenor pairs selected by the second survey's respondents

---

[21] https://www.theice.com/publicdocs/Results_of_the_IBA_Survey_on_the_use_of_LIBOR.pdf, at p. 2
[22] https://www.tactweb.org/media/2019/01/2019.05.02-LIBOR-Working-Group.pdf, at p. 3.
[23] https://www.tactweb.org/media/2019/01/2019.05.02-LIBOR-Working-Group.pdf, at p. 3.
[24] https://www.tactweb.org/media/2019/01/2019.05.02-LIBOR-Working-Group.pdf, at p. 3-4.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

were as follows: (1) USD LIBOR 3 Month; (2) USD LIBOR 1 Month; and (3) the USD LIBOR 6 Month.[25]

65.     In response to the question, "IBA would like to understand which LIBOR currency and tenor pairs you and/or your organisation use the most and for which you would like to see IBA work to seek an agreement with globally active banks to support publication after 2021," out of 109 responses, the number of respondents selecting the USD currency/tenor pairs are as follows[26]:

- Over 90 respondents selected the 3-month USD LIBOR currency/tenor pair.
- Over 75 respondents selected the 1-month USD LIBOR currency/tenor pair.
- Over 65 respondents selected the 6-month USD LIBOR currency/tenor pair.
- Over 35 respondents selected the 12-month USD LIBOR currency/tenor pair.
- Over 35 respondents selected the overnight USD LIBOR currency/tenor pair.
- 30 respondents selected the 1-week USD LIBOR currency/tenor pair.
- Over 25 respondents selected the 2-month USD LIBOR currency/tenor pair.

66.     In response to the survey question, "Please set out the main uses of the currency and tenor pairs you use the most," the following number of co-conspirator banks and other institutions surveyed responded that they mainly use the following USD LIBOR currency/tenor pairs for, "Retail products (e.g. consumer loans, credit cards, mortgages, investment products):

---

[25] https://www.theice.com/publicdocs/Results_of_the_IBA_Survey_on_the_use_of_LIBOR.pdf, at p. 5.
[26] https://www.theice.com/publicdocs/Results_of_the_IBA_Survey_on_the_use_of_LIBOR.pdf, at p. 10.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

| 1 Month USD LIBOR | 1 |
|---|---|
| 3-Month USD LIBOR | 2 |
| 6-Month USD LIBOR | 2 |
| 12-Month USD LIBOR | 4 |

67.     The IBA survey therefore illustrates the agreement, combination and conspiracy, between and among Defendants and its unnamed co-conspirators to use and continue to use the USD LIBOR as a component of the price in variable interest rate consumer loans.

## **VIOLATIONS ALLEGED**

## **Sherman Act, Section 1, 15 U.S.C. § 1**

68.     Plaintiffs incorporate by reference the preceding allegations.

69.     Defendants and their unnamed co-conspirators entered into and engaged in a conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

70.     Defendants' unlawful combination or conspiracy is an unlawful agreement to fix prices and is a *per se* violation of the antitrust laws.

71.     During the preceding four years, Defendants set and controlled LIBOR and therefore controlled the interest rates of consumer loans and credit cards tied LIBOR offered and sold by them and their co-conspirators.

72.     The conspiracy consisted of a continuing agreement, understanding or concerted action between and among Defendants and their co-conspirators in furtherance of which Defendants fixed LIBOR and thus the prices and interest rates on consumer loans and credit cards with rates tied to LIBOR offered, sold, and serviced by Defendants and their co-conspirators. Defendants' conspiracy is a *per se* violation of the federal antitrust laws and is, in any event, an unreasonable and unlawful restraint of trade and commerce.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

73.     Defendants' conspiracy, and the resulting impact on the market for LIBOR-based consumer loans and credit cards occurred in or affected interstate and foreign commerce.

74.     As a proximate result of Defendants' unlawful conduct, Plaintiffs have suffered injury to their business or property.

75.     Plaintiffs have been injured and will continue to be injured in their business and property as a result of Defendants' conduct, by way of paying anticompetitive prices for variable rate interest consumer loans and credit cards. *See* 15 U.S.C. § 15.

76.     The Plaintiffs are each entitled to preliminary and permanent injunctive relief under Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, for Defendants' violations of the Sherman Act alleged herein, and to recover their cost of suit, including a reasonable attorney's fee.

### **Sherman Act, Section 2, 15 U.S.C. § 2 – Conspiracy to Monopolize**

77.     Plaintiffs incorporate by reference the preceding allegations.

78.     Defendants and their unnamed co-conspirators entered into and engaged in a conspiracy to monopolize in violation of Section 2 of the Sherman Act.

79.     During the preceding four years, Defendants set and controlled LIBOR and therefore controlled the interest rates of consumer loans and credit cards tied LIBOR offered and sold by them and their co-conspirators.

80.     Defendants have the specific intent to achieve monopoly power in the relevant market, as alleged in the paragraphs above.

81.     In furtherance of the conspiracy, Defendants have committed several overt acts as set out herein.

82.     Defendants' conspiracy, and the resulting impact on the market for LIBOR-based consumer loans and credit cards occurred in or affected interstate and foreign commerce.

83.     As a proximate result of Defendants' unlawful conduct, Plaintiffs have suffered injury to their business or property.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

84.     Plaintiffs have been injured and will continue to be injured in their business and property as a result of Defendants' conduct, by way of paying anticompetitive prices for variable rate interest consumer loans and credit cards. *See* 15 U.S.C. § 15.

85.     The Plaintiffs are each entitled to preliminary and permanent injunctive relief under Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, for Defendants' violations of the Sherman Act alleged herein, and to recover their cost of suit, including a reasonable attorney's fee.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand the following relief from this Honorable Court:

A.     Declaring, finding, adjudging, and decreeing that the unlawful conduct alleged herein be adjudged and decreed to be an unlawful restraint of trade in violation of Section 1 of the Sherman Act and Section 16 of the Clayton Act;

B.     Declaring, finding, adjudging, and decreeing that the unlawful conduct alleged herein be adjudged and decreed to be an unlawful restraint of trade in violation of Section 2 of the Sherman Act and Section 16 of the Clayton Act;

C.     That Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees and all other persons acting or claiming to act on their behalf, be prohibited from continuing and maintaining the conspiracy alleged in the Complaint;

D.     Declaring, finding, adjudging, and decreeing that any agreement that includes USD LIBOR as a component of the variable interest rate charged is illegal and void under the antitrust laws of the United States;

E.     Prohibit the Defendants from enforcing any agreement for USD LIBOR-based variable interest rate consumer loans or credit cards, in whole or in part;

F.     Prohibit the Defendants from combining and conspiring to agree upon another so-called benchmark rate to replace LIBOR.

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

G.      Awarding to Plaintiffs treble damages under Section 4 of the Clayton Antitrust Act, 15 U.S.C. §§ 15, 26.

H.      Awarding to Plaintiffs costs of suit, including a reasonable attorney's fee as provided by Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15, 26.

I.      Granting to Plaintiffs such other and further relief to which they may be entitled and which the Court finds to be just and appropriate.

## JURY TRIAL DEMANDED

Plaintiffs Lisa McCarthy, *et al.,* demand a trial by jury as their right under the Seventh Amendment to the Constitution of the United States or as given by statute. Fed. R. Civ. P. 38.


Dated: August 18, 2020                         **ALIOTO LAW FIRM**


By:   */s/ Joseph M. Alioto*
       Joseph M. Alioto (SBN 42680)
       Jamie L. Miller (SBN 271452)
       Angelina Alioto-Grace (SBN 206899)
       **ALIOTO LAW FIRM**
       One Sansome Street, 35th Floor
       San Francisco, CA  94104
       Telephone:  (415) 434-8900
       Facsimile:   (415) 434-9200
       E-mail:  jmalioto@aliotolaw.com
                    jmiller@aliotolaw.com

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*

1

**PLAINTIFFS' COUNSEL**

2

3

Joseph M. Alioto (SBN 42680)
Jamie L. Miller (SBN 271452)
Angelina Alioto-Grace (SBN 206899)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone:  (415) 434-8900
Facsimile:   (415) 434-9200
Email:  jmalioto@aliotolaw.com
          jmiller@aliotolaw.com

4

5

6

7

8

9

Lawrence G. Papale (SBN 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, CA 94574
Telephone: (707) 963-1704
Facsimile: (707) 963-0706
Email: lgpapale@papalelaw.com

10

11

12

13

14

Christopher A Nedeau (SBN 81297)
NEDEAU LAW PC
750 Battery Street, 7th Floor
San Francisco, CA 94111
Telephone:  415-516-4010
Email: cnedeau@nedeaulaw.net

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Complaint Against Defendants' Violations of §§ 1 and 2 of the Sherman Act*