United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MCCARTHY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>INTERCONTINENTAL EXCHANGE, INC., et al.,<br><br>Defendants. | Case No. 20-cv-05832-JD<br><br>**ORDER RE MOTION TO TRANSFER AND ADMINISTRATIVE MOTION RE INJUNCTION APPLICATION**<br><br>Re: Dkt. Nos. 34, 261 |

In this consumer antitrust action, plaintiffs Lisa McCarthy and twenty-six others have sued dozens of banks and financial institutions, alleging that the defendants engaged in a price-fixing conspiracy to fix the intra-bank interest rate known as the USD ICE LIBOR rate. Dkt. No. 1. Plaintiffs, who are borrowers and consumers of loans and credit cards with variable interest rates, say that they paid the illegally-fixed price as the base of their loans, or were substantially threatened with harm from the continued use of the price-fixed rate. *Id*.

Defendants have moved to transfer this action to the Southern District of New York. Dkt. No. 34. The request is denied. Defendants' request for administrative relief in connection with plaintiffs' most recent injunction application is granted in part. Dkt. No. 261.

## I. MOTION TO TRANSFER

A subset of defendants, namely the U.S.-based entities that were served, seek to transfer the case under 28 U.S.C. § 1404 to the United States District Court for the Southern District of New York. Dkt. No. 34. Under Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

1    Defendants' main argument for a § 1404 transfer is that this case, "[l]ike dozens of other
2    cases filed in or transferred to the S.D.N.Y. since 2011, . . . asserts antitrust claims arising from
3    the U.S. Dollar London Interbank Offered Rate ('USD LIBOR'), a widely used financial
4    benchmark that is set in London and has been the subject of extensive litigation in the S.D.N.Y.
5    for nearly a decade."  Dkt. No. 34 at 1; *see also* Dkt. No. 182 at 2 ("judicial efficiency favors
6    transfer because of the 'substantial overlap' between this action and the USD LIBOR-related
7    actions already filed in the S.D.N.Y.").  Defendants highlight two S.D.N.Y. cases in particular:
8    (1) *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-2262-NRB
9    (S.D.N.Y.); and (2) *In re: ICE LIBOR Antitrust Litigation*, No. 19-cv-439-GBD (S.D.N.Y.).

10   The point is not well taken.  No district has a monopoly on LIBOR price-fixing litigation.
11   This case is not so closely related to the S.D.N.Y. cases that a good argument for judicial
12   efficiency can be made.  Defendants in effect acknowledged this conclusion by not asking the
13   Judicial Panel on Multidistrict Litigation to formally have this case made a part of the *In re*
14   *LIBOR-Based Financial Instruments* MDL pending in S.D.N.Y., or any other case in that district.
15   This signals a recognition that this case is not sufficiently related to that MDL to warrant
16   centralization.  To put a finer point on this, defendants acknowledge that the constituent cases of
17   the *In re LIBOR* MDL "relate generally to USD BBA LIBOR."  Dkt. No. 34 at 3.  In contrast, the
18   allegations here focus on the 2016 to 2020 time period, *see* Dkt. No. 1 ¶¶ 71, 79, which began a
19   few years after the Intercontinental Exchange Benchmark Administration Limited ("IBA") took
20   over managing the LIBOR from the British Bankers' Association, changing the "BBA LIBOR" to
21   the "ICE LIBOR."  *Id*. ¶¶ 30-36.

22   So too for the other case identified by defendants, *In re: ICE LIBOR Antitrust Litigation*.
23   While that case is related to the ICE LIBOR, as is this one, it is "currently on appeal before the
24   Second Circuit."  Dkt. No. 34 at 5.  The S.D.N.Y. is consequently without jurisdiction over that
25   closed case.

26   Defendants' showings for the core elements of a § 1404(a) transfer motion are equally
27   tepid.  Defendants bear the burden of establishing that the S.D.N.Y. is "the more appropriate
28   forum for the action."  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).  The

1   Court makes this determination "according to an individualized, case-by-case consideration of
2   convenience and fairness," considering such factors as "the plaintiff's choice of forum, the
3   respective parties' contacts with the forum, the contacts relating to the plaintiff's cause of action in
4   the chosen forum, the differences in the costs of litigation in the two forums, the availability of
5   compulsory process to compel attendance of unwilling non-party witnesses, and the ease of access
6   to sources of proof." *Id*. at 498-99 (quotations and numerals omitted).

7   Defendants have not established that any of these factors support a transfer. In our digital
8   world, document collection, review, and production, and other discovery tasks, are readily
9   accomplished without much regard for the geographic location of the records or the witnesses. To
10  the extent that party and non-party witnesses reside in New York or other places outside this
11  district, the burden is likely to be on plaintiffs to travel for depositions, or alternatively to conduct
12  depositions remotely. The Court handles all discovery issues in its cases, and the parties may be
13  assured that it will take an active role in resolving disputes and requiring cost-efficient discovery
14  practices. Defendants do not contest that the conduct plaintiffs challenge is alleged to have
15  occurred throughout the United States, including in this district, and that at least one of the
16  plaintiffs resides in this district. While the convenience of non-party witnesses for trial can be an
17  important factor, *see Van Mourik v. Big Heart Pet Brands, Inc.*, No. 3:17-cv-03889-JD, 2018 WL
18  3549122, at *2 (N.D. Cal. Jul. 24, 2018), defendants have not demonstrated with any degree of
19  certainty why New York might be more convenient for a trial than San Francisco. With respect to
20  plaintiffs' choice of forum, it is not a dispositive factor here, but neither is it entirely irrelevant, as
21  defendants say. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

22  Consequently, defendants have not carried their burden of demonstrating that the S.D.N.Y.
23  is the more appropriate forum for this litigation. A transfer is denied.

24  **II.    ADMINISTRATIVE MOTION RE INJUNCTION APPLICATION**

25  In response to plaintiffs' Application for an Order to Show Cause Why Injunction Should
26  Not Issue, Dkt. No. 259, defendants have filed an administrative motion that makes a number of
27  requests in the alternative. Dkt. No. 261. The request to strike plaintiffs' motion as duplicative is

1  denied.  The motion states that it is based on "new evidence," Dkt. No. 259 at 1, and the Court
2  accepts that representation.
3        Defendants' request for more time to respond to the motion is granted.  The response is
4  due by July 22, 2021.  Plaintiffs may file a reply by August 19, 2021.
5        The Court will hear plaintiffs' injunction motion on September 9, 2021, at 10:00 a.m., and
6  consider it together with plaintiffs' previous injunction motion, Dkt. No. 19.  The parties should be
7  prepared to address the two motions together at the hearing.  The Court will advise the parties in
8  advance of the hearing date whether the hearing will be held in person or by remote access.  If the
9  parties have a preference, they may state it in a joint filing.

**IT IS SO ORDERED.**

Dated:  June 3, 2021

JAMES DONATO
United States District Judge