UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MCCARTHY, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>INTERCONTINENTAL EXCHANGE, INC., et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-05832-JD<br><br>**ORDER RE MOTIONS TO DISMISS AND STAY** |

In this antitrust action, a group of consumers allege a conspiracy among the defendant banks and financial institutions to fix the intra-bank interest rate known as the USD LIBOR. Dkt. No. 1. The Court denied plaintiffs' requests for a preliminary injunction. Dkt. No. 351.

This order resolves defendants' motions to dismiss. The defendants jointly filed a motion under Federal Rule of Civil Procedure 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. Dkt. No. 315. Defendants also filed a separate "merits" motion challenging plaintiffs' complaint on various grounds under Rules 12(b)(1), 12(b)(6), and 12(b)(7). Dkt. No. 316. The ICE defendants separately filed a supplemental brief raising additional, individual arguments for dismissal. Dkt. No. 319.[1]

The parties' familiarity with the facts is assumed, and the complaint, Dkt. No. 1, is dismissed with leave to amend.

**DISCUSSION**

**I.　PERSONAL JURISDICTION**

Defendants seek dismissal on the ground that the Court lacks personal jurisdiction over any

---

[1] The United States Chamber of Commerce and others filed an unopposed motion for leave to file an amicus brief. Dkt. No. 326. The motion is granted, and the proposed amicus brief, Dkt. No. 326-1, is deemed filed.

defendant. Dkt. No. 315. Well-established standards govern the analysis of this request. In opposing defendants' motion, it is plaintiffs who "bear[] the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A district court has discretion to decide the mode of resolving a jurisdictional motion, and when, as here, the Court determines that it will receive only written materials, "these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.1977)). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Marketing*, 551 F.2d at 787). Factual conflicts in the parties' affidavits are to be resolved in favor of the party asserting jurisdiction, namely the plaintiffs. *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004); *Gevorkyan v. Bitmain Technologies Ltd.*, No. 18-cv-07004-JD, 2022 WL 3702093, at *1 (N.D. Cal. Aug. 26, 2022).

Dismissal on personal jurisdiction grounds is denied for the United States defendants.[2] For these entities, the relevant facts are not disputed, and controlling law warrants the exercise of jurisdiction. Our circuit has concluded that in cases under Section 12 of the Clayton Act, such as this one, the Court may exercise personal jurisdiction over a defendant consistent with

---

[2] Both sides agree that the United States defendants are: Intercontinental Exchange Inc., Intercontinental Exchange Holdings, Inc., ICE Data Services, Inc., ICE Pricing and Reference Data LLC, Bank of America, N.A., Bank of America Corporation, Barclays Capital Inc., Citibank N.A., Citigroup Inc., Citigroup Global Markets, Inc., Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., HSBC Bank USA, N.A., HSBC Securities (USA) Inc., JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, Lloyds Securities Inc., MUFG Securities Americas Inc., Natwest Markets Securities Inc., SMBC Capital Markets, Inc., and UBS Securities LLC. Dkt. No. 327 (plaintiffs' oppo.) at 5; Dkt. No. 339 (defendants' reply) at 1 n.1; Dkt. No. 355 (notice of voluntary dismissal of RBC Capital Markets, LLC).

constitutional principles of due process so long as the defendant has minimum contacts with the United States as a whole. *See Go-Video, Inc. v. Akai Electric Co., Ltd.*, 885 F.2d 1406, 1415 (9th Cir. 1989) (district court was "clearly correct . . . that the worldwide service provision of § 12 justifies its conclusion that personal jurisdiction may be established in any district, given the existence of sufficient national contacts."); *Action Embroidery*, 368 F.3d at 1180 (under a statute providing for nationwide service of process, such as Section 12 of the Clayton Act, "the inquiry to determine 'minimum contacts' is . . . 'whether the defendant has acted within any district of the United States or sufficiently caused foreseeable consequences in this country.") (quoting *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985)).

In *Action Embroidery*, the circuit determined that, "[a]s a Virginia professional corporation operating in the United States, [the law firm] Wolcott has clearly had such minimum contacts. Constitutional principles of due process are therefore satisfied, and personal jurisdiction over Action and Vanguard's antitrust claims against Wolcott is proper." *Id*. So too, here. Plaintiffs' allegations that each of the United States defendants "was organized in a state in these United States and has its principal place of business or headquarters in a city or cities within the United States" is not disputed. Dkt. No. 327 at 6. Defendants do not contest the existence of these minimum contacts, but say that these do not show that any United States defendant "is 'at home' in California." Dkt. No. 339 at 3. This misses the mark because the relevant forum here is the United States, not California. *See Action Embroidery*, 368 F.3d at 1180. A "minimum contacts" analysis is proper here, and is met for the United States defendants because each one was a United States company "operating in the United States." *Id*.

Defendants' emphasis on the distinction between "general" and "specific" jurisdiction, *see* Dkt. No. 339, is of no moment. Neither *Action Embroidery*, 368 F.3d 1174, nor *Go-Video*, 885 F.2d 1406, specified which category of personal jurisdiction it was finding to be applicable. The United States Supreme Court has observed that "[t]he law of specific jurisdiction . . . seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*,

3

1    137 S. Ct. 1773, 1780 (2017)).  It is not at all clear how, or if, that concern applies where the

2    relevant forum is the United States as a whole.  In any event, the exercise of personal jurisdiction

3    over the United States defendants is solidly supported by *Action Embroidery*, 368 F.3d 1174.

4        A different conclusion is warranted for the foreign defendants.[3]  For these defendants,

5    plaintiffs have not met their obligation to "come forward with facts, by affidavit or otherwise,

6    supporting personal jurisdiction."  *Scott*, 792 F.2d at 927 (quotations omitted).  Defendants

7    submitted an extensive set of declarations on their contacts with the United States, Dkt. No. 315-2.

8    Plaintiffs did not respond in kind.  *See* Dkt. No. 327.  The allegations plaintiffs rely on in the

9    complaint are conclusory, vague, and controverted.  *See id.* at 11-14.  This will not do for

10   plaintiffs' burden of establishing personal jurisdiction.  *See Schwarzenegger*, 374 F.3d at 800.

11   The foreign defendants are dismissed for lack of personal jurisdiction, and the dismissal is without

12   prejudice.  *See Grigsby v. CMI Corp.*, 765 F.2d 1369, 1372 n.5 (9th Cir. 1985) ("Plaintiffs argue

13   that although the district court was correct in determining that it had no personal jurisdiction over

14   the Torchmark defendants, the court erred in dismissing the complaint 'with prejudice' as to these

15   defendants.  This is true.").

## II.    ANTITRUST STANDING

17       Plaintiffs have alleged claims against the United States defendants under Sections 1 and 2

18   of the Sherman Act, 15 U.S.C. §§ 1, 2, and they seek injunctive relief and treble damages under

19   Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26.  Dkt. No. 1.  The claims are dismissed

20   for lack of antitrust standing.

21       "The class of persons who may maintain a private damage action under the antitrust laws is

22   broadly defined in § 4 of the Clayton Act."  *Associated General Contractors of Cal., Inc. v. Cal.*

23   *State Council of Carpenters*, 459 U.S. 519, 529 (1983) (*AGC*) (citing 15 U.S.C. § 15).  But

---

[3] The foreign defendants are:  ICE Benchmark Administration Limited, Barclays Bank PLC, Coöperatieve Rabobank U.A., Credit Suisse Group AG, Credit Suisse AG, Deutsche Bank AG, HSBC Holdings plc, HSBC Bank plc, Lloyds Bank plc, MUFG Bank, Ltd., The Bank of Tokyo-Mitsubishi UFG Ltd., Mitsubishi UFJ Financial Group, Inc., Royal Bank of Scotland Group plc, Royal Bank of Scotland plc, National Westminster Bank plc, Sumitomo Mitsui Banking Corporation, Sumitomo Mitsui Financial Group Inc., Sumitomo Mitsui Banking Corporation Europe Ltd., UBS  Group AG, and UBS AG.  Dkt. No. 327 at 7; Dkt. No. 339 at 1 n.2; Dkt. No. 345; Dkt. No. 355.

Section 4 is "not to be read literally so that 'any person' who was injured 'by reason of anything forbidden by the antitrust laws' could maintain an action." *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir. 1989) (en banc) (quoting *AGC*, 459 U.S. at 535). Instead, "[t]o determine whether the plaintiff's case falls within the intended area of statutory protection, we must 'evaluate the plaintiff's harm, the alleged wrongdoing by the defendants and the relationship between them.'" *Id.*

The Court will balance several factors, no one of which is "decisive." *Id.* They include "(1) the specific intent of the alleged conspirators; (2) the directness of the injury; (3) the character of the damages, including the risk of duplicative recovery, the complexity of apportionment, and their speculative character; (4) the existence of other, more appropriate plaintiffs; [and] (5) the nature of the plaintiff's claimed injury." *Id.*; *see also American Ad Mgmt., Inc. v. General Telephone Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999) (antitrust standing factors include "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages").

A threshold problem for plaintiffs is the rather cavalier approach they took to this issue. Antitrust standing is different from Article III standing and requires a "more demanding" showing. *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1997); *AGC*, 459 U.S. at 535 n.31 ("Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action."). Consequently, the Court's prior rejection of defendants' Article III standing challenge, *see* Dkt. No. 351 at 3-5, was not the end of the matter. In addition, standing is an ongoing inquiry, and the "need to satisfy the requirements of Article III persists throughout the life of the lawsuit, with the later stages of the case requiring more of plaintiffs than is required at this early stage." *Id.* at 4-5 (quotations and citations omitted).

It was plaintiffs' burden to plausibly allege antitrust standing. *See City of Oakland v. Oakland Raiders*, 20 F.4th 441, 448 (9th Cir. 2021) ("To plead a Sherman Act claim, a private plaintiff must show that it is a proper party to pursue the claim -- a requirement known as antitrust

5

1  standing."). "The doctrine of antitrust standing requires an inquiry beyond that performed to
2  determine standing in a constitutional sense. If standing is not found, an essential element of the
3  plaintiff's case is missing and the plaintiff's case fails. To score a home run the plaintiff must first
4  have touched first base." *Dick Geothermal*, 890 F.2d at 145 (internal quotations and citation
5  omitted). But plaintiffs made only a passing mention of antitrust standing: "Defendants argue
6  that plaintiffs lack antitrust standing. This argument ignores the fact that the antitrust laws
7  prohibit price-fixing, and any loans which contain the illegal price is the very kind of damage that
8  flows from the price-fixing." Dkt. No. 328 at 2. This was not a serious effort to demonstrate the
9  adequacy of plaintiffs' antitrust standing allegations under the case law.

10      The Court's independent review of the complaint confirmed the absence of antitrust
11  standing. The complaint says nothing about the "specific intent of the alleged conspirators," *Dick
12  Geothermal*, 890 F.2d at 146, and what the defendants may have gotten out of continuing to
13  follow the formula and method for setting LIBOR, which are well-known to the public, as
14  demonstrated by plaintiffs' allegations. *See*, *e.g.*, Dkt. No. 1 ¶¶ 42-43, 49-52. The "directness of
15  the injury" is also questionable, as are the "nature of the plaintiff's claimed injury" and the
16  "existence of other, more appropriate plaintiffs." *Dick Geothermal*, 890 F.2d at 146. Plaintiffs
17  offer conclusory and vague allegations to the effect that "numerous plaintiffs, including plaintiffs
18  Lisa McCarthy, Jose Brito, Jan-Marie Brown, Brenda Davis, Gabriel Garavanian, Harry
19  Garavanian, Bill Rubinsohn, Sandy Russell, Gary Talewsky, are consumers of credit cards issued
20  by unnamed co-conspirator Capital One, which lists the 3-month and 1-month LIBOR rates in its
21  statements as possible components in disclosing variable interest rates to be charged to its
22  customers," and "plaintiff Yvonne Jocelyn Gardner is a consumer of a variable interest rate
23  mortgage from defendant Bank of America." Dkt. No. 1 ¶¶ 5-6. Questions left unanswered by
24  these allegations and the complaint as a whole include: whether (and which) plaintiffs even had
25  interest rates or other financial obligations that were tied to the LIBOR rate; whether plaintiffs
26  made any payments that were tied to the LIBOR rate; whether, and to what degree, the LIBOR
27  rate was higher than what a competitive rate would have been in the absence of the LIBOR
28  formula and methodology; and the role played by third-party credit-issuing companies such as

6

1   Capital One, which presumably set other important components of the interest rates and financial
2   obligations plaintiffs were subject to. Overall, plaintiffs have not done enough to establish
3   antitrust standing.

### III. OTHER ARGUMENTS FOR DISMISSAL

The Court declines to reach defendants' other arguments for dismissal at this time. As plaintiffs contemplate amendment of the complaint, they are advised to take into account the Court's concerns about their theory of the case stated in the injunction order, Dkt. No. 351, and during the hearings. "In a field in which catchwords have often been dominant there is a grave risk of applying a tag with mechanical literalness." *Dick Geothermal*, 890 F.2d at 151. That observation has particular application to the way plaintiffs have framed and attempted to litigate this case, with an unrelenting focus on defendants' agreement "to fix" the LIBOR rate "by formula." *See*, *e.g.*, Dkt. No. 328 at 1. This approach is all the more doubtful because the complaint says nothing about how the LIBOR formula enabled its members to "maximize their profits," even though that is a major element of a Section 1 claim. *See City of Oakland*, 20 F.4th at 458 ("In a horizontal price-fixing scheme . . . members of a cartel 'collude on price and output in an effort to maximize their profits.'").

Plaintiffs acknowledge that the LIBOR rate is "used by an estimated US $350 trillion ($350,000,000,000,000.00) of outstanding contracts in maturities ranging from overnight to more than 30 years." Dkt. No. 1 at 3. As the Supreme Court stated "over 20 years ago in *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528, n.17 (1983), 'a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The current version of plaintiffs' complaint is sorely lacking in that specificity.

### CONCLUSION

Plaintiffs' complaint, Dkt. No. 1, is dismissed in its entirety, with leave to amend. An amended complaint must be filed by October 4, 2022. The amended complaint may re-allege claims against the foreign defendants who were dismissed without prejudice for lack of personal jurisdiction, but it may not add new defendants or new claims without the Court's prior consent.

1    Pending further order, the case is stayed in all other respects. The discovery dispute and
2    request for a case schedule, Dkt. Nos. 317, 363, are terminated without prejudice and will be
3    addressed as developments warrant.
4    **IT IS SO ORDERED.**
5    Dated: September 13, 2022

JAMES DONATO
United States District Judge