UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MCCARTHY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>INTERCONTINENTAL EXCHANGE, INC., et al.,<br><br>    Defendants. | Case No. 20-cv-05832-JD<br><br>**ORDER RE DISMISSAL** |

This antitrust action was filed by a group of consumers alleging a conspiracy among the defendant banks and financial institutions to "fix" the intra-bank interest rate known as the USD LIBOR. Dkt. No. 1. After denying plaintiffs' requests for a preliminary injunction, Dkt. No. 351, the Court dismissed the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, with leave to amend. Dkt. No. 365. The dismissal was warranted because plaintiffs had failed to meet their burden of establishing personal jurisdiction over the foreign defendants, and to plausibly allege antitrust standing for their claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. *Id*.

Plaintiffs filed a first amended complaint that did not change much in the way of allegations, and which focused again on a "price-fixed LIBOR rate" said to violate Sherman Act Section 1 and Section 2. Dkt. No. 366 (FAC) ¶¶ 8, 142-61. Defendants ask to dismiss on the same grounds they raised previously. Dkt. Nos. 372, 374, 375.[1] The parties' familiarity with the record is assumed, and the FAC is dismissed. The case is ordered closed.

---

[1] Plaintiffs filed a letter advising the Court that "on June 30, 2023, LIBOR terminated," and there has been a "complete cessation of LIBOR as of June 30, 2023." Dkt. No. 394. This development does not affect the Court's analysis of the legal issues presented by defendants' dismissal motions.

.

**DISCUSSION**

**I.    PERSONAL JURISDICTION**

The foreign defendants' motion to dismiss for lack of personal jurisdiction, Dkt. No. 375, is granted without further leave to amend.[2] As the Court noted in the prior order of dismissal, plaintiffs bear "the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). The Court has discretion over the manner of resolving a jurisdictional motion, and when, as here, the Court receives only written materials, "these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss." *Data Disc, Inc. v. Systems Technology Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (quoting *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.1977)). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Marketing*, 551 F.2d at 787). Factual conflicts in the parties' affidavits are to be resolved in favor of the party asserting jurisdiction, namely the plaintiffs. *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004); *Gevorkyan v. Bitmain Technologies Ltd.*, No. 18-cv-07004-JD, 2022 WL 3702093, at *1 (N.D. Cal. Aug. 26, 2022).

For the foreign defendants, the Court previously concluded that plaintiffs had not "met their obligation to 'come forward with facts, by affidavit or otherwise, supporting personal

---

[2] The foreign defendants are: ICE Benchmark Administration Limited, Barclays Bank PLC, Coöperatieve Rabobank U.A., Credit Suisse Group AG, Credit Suisse AG, Deutsche Bank AG, HSBC Holdings plc, HSBC Bank plc, Lloyds Bank plc, MUFG Bank, Ltd., The Bank of Tokyo-Mitsubishi UFG Ltd., Mitsubishi UFJ Financial Group, Inc., Royal Bank of Scotland Group plc, Royal Bank of Scotland plc, National Westminster Bank plc, Sumitomo Mitsui Banking Corporation, Sumitomo Mitsui Financial Group Inc., SMBC Bank International plc (fka Sumitomo Mitsui Banking Corporation Europe Ltd.), UBS Group AG, and UBS AG. Dkt. No. 375 n.1.

jurisdiction.'" Dkt. No. 365 at 4 (quoting *Scott*, 792 F.2d at 927). The same is true again. Defendants filed an extensive set of declarations with respect to their lack of contacts with the United States, Dkt. Nos. 375-1 - 375-29, and plaintiffs did not answer with a single opposing declaration or contrary factual showing of any kind, *see* Dkt. No. 381. Plaintiffs' appeal to "common sense" in lieu of concrete facts, *see id*. at 3, is an entirely inadequate response, as is the passing mention of the extraterritorial reach of the Sherman Act, *id*. at 6-7.

The allegations in the FAC that plaintiffs rely on are again conclusory, vague, and controverted. *See id.* at 8-14. For example, plaintiffs have alleged that "[a]ll of the foreign Defendants['] United States subsidiaries aided in the publication, promulgation, implementation and sale of the USD LIBOR rates in the United States on behalf of their parent companies." FAC ¶ 86. But the foreign defendants have proffered sworn declarations denying that allegation. *See, e.g.*, Dkt. No. 375-2 ¶ 9 ("During the relevant time period, . . . , no UBS branch, office, agency, or employee in the United States was responsible for the determination or submission of rates for use in the calculation of USD ICE LIBOR."); Dkt. No. 375-5 ¶ 13 ("USD LIBOR is administered and set on every applicable London business day from IBA's office in London. The entire daily process of receiving submissions and calculating and publishing the rates is automated and overseen by operations personnel in London."); Dkt. No. 375-6 ¶ 12 ("BBPLC's U.S. Dollar ICE LIBOR submissions have been determined by designated employees in London and transmitted from London. No U.S. branch or office of BBPLC has ever been responsible for the determination of USD ICE LIBOR rates or the submission of those rates to the ICE Benchmark Administration in the U.K. for use in the calculation of USD ICE LIBOR."). Plaintiffs did not tender any facts that might undercut this evidence.

Overall, plaintiffs did not meet their burden of establishing personal jurisdiction over the foreign defendants. *See Schwarzenegger*, 374 F.3d at 800. Plaintiffs did not make a prima facie showing that the foreign defendants "performed some act or consummated some transaction by which [they] purposefully directed [their] activities toward the United States or purposefully availed [themselves] of the privilege of conducting business in the United States," or that plaintiffs' claims "arise out of result from" the foreign defendants' "forum-related activities."

*Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) (cleaned up). Plaintiffs' grabbag of arguments about enterprise jurisdiction, conspiracy-based jurisdiction, or jurisdiction based on service of process and business registration, *see* Dkt. No. 381 at 4-5, 12-14, are legally untenable and wholly unpersuasive.

Plaintiffs' request for jurisdictional discovery is declined. *See id*. at 14-15. The Court has not hesitated to permit such discovery in cases where it was warranted, but that is not the situation here. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507-09 (9th Cir. 2023) ("a mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery"; district court properly exercised its discretion to deny jurisdictional discovery where plaintiffs' theories of jurisdiction were "too speculative" and plaintiffs proffered only "bare allegations" which were "trumped by sworn statements to the contrary") (internal quotations and citation omitted).

## II. ANTITRUST STANDING

Plaintiffs have again alleged claims against the United States defendants under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and they seek injunctive relief and treble damages under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26. FAC ¶¶ 142-61, pp. 56-57 (Prayer for Relief). The Court previously dismissed these claims for lack of antitrust standing. Dkt. No. 365 at 4-7.

"To determine whether the plaintiff's case falls within the intended area of statutory protection," the Court "must 'evaluate the plaintiff's harm, the alleged wrongdoing by the defendants and the relationship between them.'" *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 146 (9th Cir. 1989) (en banc). The factors for this inquiry include: "(1) the specific intent of the alleged conspirators; (2) the directness of the injury; (3) the character of the damages, including the risk of duplicative recovery, the complexity of apportionment, and their speculative character; (4) the existence of other, more appropriate plaintiffs; [and] (5) the nature of the plaintiff's claimed injury." *Id.*; *see also American Ad Mgmt., Inc. v. General Telephone Co. of Cal.*, 190 F.3d 1051, 1054 (9th Cir. 1999) (antitrust standing factors include "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to

4

forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages").

In the prior order, the Court found that plaintiffs had not met their burden of plausibly alleging antitrust standing where, *inter alia*, the complaint said "nothing about the 'specific intent of the alleged conspirators,' *Dick Geothermal*, 890 F.2d at 146, and what the defendants may have gotten out of continuing to follow the formula and method for setting LIBOR, which are well-known to the public, as demonstrated by plaintiffs' allegations." Dkt. No. 365 at 6. Plaintiffs also did not adequately allege or explain the "directness of the injury," the "nature of the plaintiff's claimed injury," or the "existence of other, more appropriate plaintiffs." *Id*. (quoting *Dick Geothermal*, 890 F.2d at 146). Other questions left unanswered by plaintiffs in the complaint included: "whether (and which) plaintiffs even had interest rates or other financial obligations that were tied to the LIBOR rate; whether plaintiffs made any payments that were tied to the LIBOR rate; whether, and to what degree, the LIBOR rate was higher than what a competitive rate would have been in the absence of the LIBOR formula and methodology; and the role played by third-party credit-issuing companies such as Capital One, which presumably set other important components of the interest rates and financial obligations plaintiffs were subject to." *Id*. at 6-7.

The allegations in the FAC have done little to improve these shortfalls. To be sure, plaintiffs added allegations that refer to the issues flagged by the Court. For example, plaintiffs now allege that "[t]he specific intent of the Defendant [*sic*] as co-conspirators in their agreement to set and published [*sic*] LIBOR rates was to promulgate agreed-upon non-competitive rates that would be exploited by their banks, by other banks, and by financial institutions throughout out [*sic*] the world, but particularly in the United States with respect to USD LIBOR." FAC ¶ 30. And, "[t]he nature and directness of the plaintiff's [*sic*] claimed injury is that they paid the overcharge." *Id*. ¶ 31. While these allegations, and others like them, pay superficial service to the Court's concerns, they do not fundamentally resolve them in a meaningful way by supplyfing facts to back them up.

The allegations about the plaintiffs' injury, and the relationship between the plaintiffs' harm and the alleged wrongdoing by the defendants remain hopelessly vague. *See Dick*

5

*Geothermal*, 890 F.2d at 146. For 23 of the 27 plaintiffs, there are no specific allegations of harm whatsoever, *i.e.*, the FAC says nothing about any interest they paid on any financial instrument. *See* FAC ¶¶ 18-26. There are only vague and conclusory allegations to the effect that "each Plaintiff was either a borrower/consumer of a loan or credit card with a LIBOR interest rate or has been threatened with injury as a result of the LIBOR rate," and that "some Plaintiffs are purchasers of LIBOR based interest rate loans and credit." *Id*. ¶¶ 18-19.

The slightly more specific allegations about the remaining four plaintiffs also remain deficient. Plaintiff Lisa McCarthy is said to have been an "authorized user" on a Capital One credit card, which "lists the 1-month LIBOR rates in its statements as possible components in disclosing variable interest rates to be charged to its customers." FAC ¶ 20. McCarthy was also a "purchaser of a LIBOR-based adjustable rate mortgage through Fifth Third Mortgage Company." *Id*. ¶ 21. Plaintiff Harry Garavanian is "a borrower on a LIBOR based Education Refinance Loan from Citizens Bank" and he "has paid LIBOR based interest on his note." *Id*. ¶ 24. Plaintiff Jose Brito is a "borrower on a LIBOR-based adjustable rate mortgage based upon the one-year LIBOR rate" from Prospect Mortgage, LLC, and he "has paid LIBOR-based interest on his adjustable rate mortgage." *Id*. ¶ 25. But the complaint is devoid of any allegations that explain how, specifically, these "LIBOR-based" rates were tied to LIBOR, or, more importantly, what any of these defendants might have done to set the rates in these financial instruments issued by third parties. A single plaintiff, Yvonne Jocelyn Gardner, alleges that she is a "purchaser of a LIBOR rate based note from Defendant Bank of America." *Id*. ¶ 23. But plaintiffs do not refute defendants' argument that the terms of that note, which should be deemed incorporated by reference into the FAC, show that Gardner's mortgage was a "fixed-rate loan, not a variable-interest-rate loan tied to LIBOR," and so Gardner has not plausibly alleged that she ever "paid 'LIBOR based interest' in connection with this note." Dkt. No. 372 at 7; Dkt. No. 383.

The state of play is that, while defendants are alleged to have set the USD LIBOR rate using publicly-known formulas that necessarily excluded the lowest submitted rates, *see*, *e.g.*, FAC ¶¶ 33-35, 106-08, they are not alleged to have actually charged any LIBOR-based interest rates to any plaintiff in this case. Instead, plaintiffs have alleged in a wholly conclusory manner

6

that "Defendants-Co-Conspirators and their co-conspirator banks and credit card companies in the United States agree[d] to use and d[id] use USD LIBOR as a component of the interest charged in fixed and variable interest rate loans on credit cards in the United States." *Id*. ¶ 110. To put a finer point on it, plaintiffs say that for "LIBOR-based loans," "[i]f one applies for a loan based on LIBOR, the financial firm offering the loan will take the LIBOR rate for the date the loan is quoted and add an additional percentage, say 2%. . . . The lender references LIBOR when adjusting the interest rate on the loan, changing the amount paid each month during the period of adjustment." *Id*. ¶ 111. Under plaintiffs' own allegations, then, the relationship between plaintiffs' harm and the defendants' alleged wrongdoing is too remote to be actionable. It is the third-party lender or credit card issuer that sets the interest rates to be charged to consumers, and there are no non-conclusory, plausible allegations showing that the defendants forced those lenders or credit card issuers to use the USD LIBOR rate in any particular way.

Consequently, the allegations in the FAC did not meaningfully show that plaintiffs' injuries were direct, or that they are the most appropriate plaintiffs to challenge the antitrust violations alleged here, which appears quite doubtful. *See Dick Geothermal*, 890 F.2d at 146. Plaintiffs' approach to litigating this case continues to suffer from the other issues previously noted by the Court, *e.g.*, their insistence on applying "tag[s such as price fixing] with mechanical literalness," *id*. at 151. But plaintiffs' failure to adequately plead antitrust standing is a sufficient ground for dismissal, and the Court finds it unnecessary to catalog the other deficiencies in plaintiffs' pleading.

## CONCLUSION

Plaintiffs' claims against the foreign defendants, *see* n.1 *supra*, are dismissed without prejudice. *See Grigsby v. CMI Corp.*, 765 F.2d 1369, 1372 n.5 (9th Cir. 1985). Plaintiffs' claims against the United States defendants are dismissed with prejudice for failure to adequately plead antitrust standing.

Plaintiffs have already been given an opportunity to amend, and they used that opportunity to file a complaint that is almost identical in substance to their prior version. The Court finds that

further amendment is not appropriate, *see Chodos v. W. Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002), which plaintiffs have not requested in any event.

The pending discovery dispute letters, Dkt. Nos. 368, 376, 394, are terminated as moot. Judgment will be entered and the case closed.

**IT IS SO ORDERED.**

Dated:  October 10, 2023

JAMES DONATO
United States District Judge